# In the United States Court of Federal Claims

No. 08-194 T
(Filed: November 14, 2008)

*************************************

| | | |
|---|---|---|
| ADRIAN GLUCK AND | * | |
| SUSAN GLUCK, | * | |
| | * | Subject Matter Jurisdiction; RCFC 12(b)(1); |
| Plaintiffs, | * | Abatement of Income Taxes and Interest; |
| | * | 28 U.S.C. § 1346(a)(1); Full Payment Rule |
| v. | * | |
| | * | |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |

*************************************

Joyce Ann Rebhun, Beverly Hills, CA, for plaintiffs.

Karen Marie Groen, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Before the court is defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction. In this action, plaintiffs seek the abatement of income taxes and interest assessed against them by defendant, by and through the Internal Revenue Service ("IRS"). Defendant moves to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") on the grounds that plaintiffs have not fully paid their taxes for the year in question and that the court cannot order an abatement of tax. For the reasons set forth below, the court grants defendant's motion.

## I. FACTUAL BACKGROUND[1]

On or about April 24, 1999, plaintiffs Adrian and Susan Gluck filed a joint income tax return for the 1996 calendar year. Compl. Ex. B at 2; cf. Compl. ¶ 5 (alleging that plaintiffs filed

---

[1] The facts are derived from plaintiffs' complaint ("Compl."), exhibits attached to the complaint ("Compl. Ex."), defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Def.'s Mot."), and two exhibits accompanying a declaration submitted by defendant's counsel, Karen M. Groen, that defendant appended to its motion ("Groen Decl. Ex.").

their return "[o]n or before May 31, 1999").  On their joint return, plaintiffs reported business income of $200,000.00, an adjusted gross income of $198,729.00, taxable income of $175,601.00, and a total tax liability of $59,668.00.  Compl. Ex. B at 2; Groen Decl. Ex. 1 at 4; Groen Decl. Ex. 2 at 9-10.  Plaintiffs did not pay the tax when they filed their return.  Def.'s Mot. 2; Compl. Ex. B at 2-3; Compl. Ex. C.  The IRS subsequently made minor adjustments to plaintiffs' total tax liability, Def.'s Mot. 2, and, on May 31, 1999, assessed $60,842.36 as plaintiffs' federal income tax liability for 1996, Groen Decl. Ex. 1 at 4.  Thereafter, plaintiffs were assessed interest and penalties totaling $43,577.96 for their failure to pay income tax for 1996.  See Compl. Ex. B at 2-3; Groen Decl. Ex. 1 at 3-8.

In December 2000, plaintiffs filed an amended income tax return for 1996.[2]  Compl. ¶ 5.  Plaintiffs allege that their amended return

> claim[ed] a casualty loss which they failed to report on their original tax return for the loss of their personal residence due to mold contamination; on the amended tax return[,] the Plaintiffs claimed that the sellers failed to disclose the problems with water intrusion[,] which caused the growth of mold and fungus and which, as a result, forced the Plaintiffs to abandon their house.

Id.  Plaintiffs claimed $292,000.00 as a casualty loss, which included the following itemized amounts: $200,000.00 for a down payment on the house; $25,000.00 for heating and air conditioning repairs; $5,000.00 for repairs to walls and ceilings; $10,000.00 for roofing repairs; and $2,000.00 for window replacement.[3]  Id.  Plaintiffs' amended return indicated that they sought an increase—from $10,582.00 to $282,609.00—in itemized deductions on their original 1996 return.  Compl. Ex. A at 1.  As such, plaintiffs reported a casualty theft loss of $272,027.00.[4]  Id. at 1-2.  Plaintiffs calculated their tax liability as $47,711.00.  Id. at 1.

---

[2]  Plaintiffs allege in their complaint that they filed an amended tax return for tax year "2006" in December 2000.  The court construes this reference, as well as others throughout plaintiffs' complaint to the year 2006, as a typographical error.  It is not possible for plaintiffs to have filed an amended tax return in 2000 for a future tax year.

[3]  The itemized total of these alleged amounts equals $242,000.00 and not $292,000.00.  It is therefore apparent that the amount alleged as plaintiffs' down payment on the house contains a typographical error.  Compare Compl. ¶ 5 (alleging $200,000.00 as the down payment amount), with Compl. Ex. A at 7 (indicating in a casualty theft loss computation that plaintiffs' down payment was $250,000.00), and Compl. Ex. C at 3 (noting that plaintiffs' down payment totaled $250,000.00).

[4]  Plaintiffs calculated this total by subtracting two amounts–ten percent of their adjusted gross income of $198,729.00, or $19,873.00, and $100.00, the lesser amount from IRS Form 4684, line 10–from the $292,000.00 they claimed as a casualty loss.  See Compl. Ex. A at 4-5.

On January 18, 2006, Kris Bodner, an IRS appeals officer, sent plaintiffs' counsel a letter in which the IRS stated that it reviewed a settlement document plaintiffs submitted to the agency.[5] Compl. Ex. C at 2-3. Ms. Bodner indicated:

> Based on the documents provided, it is my finding that this issue lends itself to a hazards settlement. In the settlement of the lawsuit against Crowell & Moring and in the other documents you provided concerning the lawsuits, there are no direct statements that the court found that the [sellers] intentionally failed to disclose the water/mold problems with the house. However, the fact that the settlement awarded the Gluck children monetary damages lends credence to the fact that the court gave some credibility to the taxpayers' allegation that the water/mold in the house caused medical problems and damage to the children. . . . This, in turn, implies that the court gave some credibility to the taxpayers' allegation that the [sellers] intentionally failed to disclose the problem when they sold the house to the taxpayers[,] which would construe a theft loss under CA law. If the finding were that the [sellers] were only negligent, then the nondisclosure would not rise to the level of being illegal and there would be no . . . theft loss and no settlement. However, the settlement in this case was for the lawsuit against Crowell & Moring and not for the action against the [sellers].

Id. Ms. Bodner concluded that a forty percent hazards settlement "reflects the litigating hazards in this case since there is not enough information to know one way or the other and since I believe the taxpayers face greater litigating hazards than the government." Id. at 3. As a result, the IRS indicated that it would allow plaintiffs' $250,000.00 down payment to be deducted "only for purposes of computing the theft loss." Id. The IRS determined plaintiffs' deductible loss to be $80,027.00 and "computed the amount of the decrease in the tax to be $26,163 with corresponding decreases in the failure to file and failure to pay penalties of $5,886.75 and $3,421.96[,] respectively." Id. Ms. Bodner prepared and enclosed a form for plaintiffs' signatures "if [they] agree[d] with the determination," and requested receipt of the form by no later than January 30, 2006. Id.

Plaintiffs did not accept the IRS's settlement offer for a partial abatement of tax and decreases in the failure to file and to pay penalties. Id. at 1. On March 22, 2006, the IRS rejected

---

[5] The settlement agreement arose out of plaintiffs' claim against the law firm Crowell & Moring for its alleged failure to represent plaintiffs in a lawsuit they filed against the sellers of the house. Compl. Ex. C at 2. Plaintiffs initiated a lawsuit against the sellers alleging a failure to disclose water and mold contamination, which caused permanent medical damage to plaintiffs' five children. Id. Plaintiffs accepted a $675,000.00 settlement from Crowell & Moring, although they received no monies under the terms of the settlement agreement for themselves. Id. A portion of the settlement was set aside for attorneys fees and other costs, and plaintiffs' children received $447,000.00 in the form of annuities. Id.

plaintiffs' claim for a $47,711.00 tax adjustment.  Id.  In its March 22, 2006 notice, the IRS determined that it

> cannot allow the above claim for an adjustment to your tax for the reasons stated below:
>
> > In the letter sent to you dated 1/18/06 you were offered a settlement allowing part of the amount of your claim.  You decided not to accept the settlement offer, so none of the claimed amount is being allowed.
>
> Our decision is based on provisions of the Internal Revenue laws and regulations. This letter is your legal notice that your claim is fully disallowed.

Id.  Plaintiffs do not allege that they made any payment of tax for 1996.  See Compl. ¶¶ 1-8.

On March 20, 2008, plaintiffs instituted a lawsuit in the United States Court of Federal Claims ("Court of Federal Claims") seeking "the abatement of income taxes and interest erroneously and illegally assessed [against] the Plaintiffs . . . ."  Id. ¶ 3; accord id. ¶ 7 (alleging that the "assessment and collection of the full deficiency assessment plus interest for the calendar year 1996 without adjustment for the casualty loss is erroneous and illegal").  Plaintiffs seek judgment against defendant in the amount of $47,711.00 plus interest, as well as attorney's fees and other costs.  Compl. Prayer for Relief.

## II.  LEGAL STANDARDS

### A.  Jurisdiction

The Court of Federal Claims is a court of limited jurisdiction.  Jentoft v. United States, 450 F.3d 1342, 1349 (Fed. Cir. 2006) (citing United States v. King, 395 U.S. 1, 3 (1969)).  The scope of this court's jurisdiction to entertain claims and grant relief depends upon the extent to which the United States has waived its sovereign immunity.  King, 395 U.S. at 4.  In "construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress."  Fid. Constr. Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir. 1983).  A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed."  King, 395 U.S. at 4.  Unless Congress consents to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States."  United States v. Sherwood, 312 U.S. 584, 587-88 (1941).

## 1.  The Tucker Act

The Tucker Act confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000).  Although the Tucker Act waives the sovereign immunity of the United States for claims for money damages, it "itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in part).  The separate source of substantive law must constitute a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).  "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." Cummings v. United States, 17 Cl. Ct. 475, 479 (1989) (citations omitted), aff'd, 904 F.2d 45 (Fed. Cir. 1990); see also United States v. Testan, 424 U.S. 392, 398 (1976) (stating that a "grant of a right of action must be made with specificity").

## 2.  Tax Refund Claims

It is "undisputed" that the Court of Federal Claims possesses the authority to adjudicate tax refund claims. CNG Transmission Mgmt. VEBA v. United States, 84 Fed. Cl. 327, 328 (2008); accord Radioshack Corp. v. United States, 82 Fed. Cl. 155, 158 (2008); see also Artuso v. United States, 80 Fed. Cl. 336, 338 (2008) ("A tax refund claim, with very few exceptions, is the only type of tax dispute over which this court has jurisdiction."[6]).  "A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims." United States v. Clintwood Elkhorn Mining Co., 128 S. Ct. 1511, 1514 (2008); accord

---

[6]  The Court of Federal Claims possesses jurisdiction over other types of tax-related claims.  For example, the court may entertain declaratory judgment actions pursuant to 28 U.S.C. § 1507, which concerns classification of entities pursuant to 26 U.S.C. § 501(c)(3) (2000) and other related provisions of the Internal Revenue Code ("IRC").  Additionally, the court has jurisdiction under 28 U.S.C. § 1508 to hear cases concerning certain partnership proceedings under 26 U.S.C. §§ 6226, 6228(a). See Artuso, 80 Fed. Cl. at 338 n.1; Skillo v. United States, 68 Fed. Cl. 734, 740 n.11 (2005).  Furthermore, the United States Court of Claims, in Brown & Williamson, Ltd. v. United States, asserted jurisdiction to allow interest on a tax refund pursuant to a tax treaty that created a right to the retroactive refund of taxes.  688 F.2d 747, 752 (Ct. Cl. 1982).

28 U.S.C. § 1346(a)(1).  Section 1346 of title 28 of the United States Code provides, in relevant part:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> > (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected . . . .

28 U.S.C. § 1346(a)(1).  In order for the court to assert jurisdiction over such a claim, however, a plaintiff must satisfy the requirements set forth in the IRC, which establishes a "scheme [that] provides that a claim for a refund must be filed with the [IRS] before suit can be brought, and establishes strict timeframes for filing such a claim."  Clintwood Elkhorn Mining Co., 128 S. Ct. at 1514.

In Flora v. United States, the United States Supreme Court ("Supreme Court") limited the court's tax refund suit jurisdiction to include only those claims in which the taxpayer fully paid all taxes assessed for the tax year at issue prior to the initiation of the claim.  357 U.S. 63, 72-73 (1958) ("Flora I"), aff'd on reh'g, 362 U.S. 155 (1960) ("Flora II").  The Flora I court's interpretation of the legislative history of section 1346(a)(1) yielded a conclusion that Congress intended no change to the requirement that full payment must be made before instituting suit. 357 U.S. at 72-73; accord Flora II, 362 U.S. at 155 (determining that the language set forth in 28 U.S.C. § 1346(a)(1) "reflects an understanding that full payment of the tax was a prerequisite to suit").  The United States Court of Claims, the predecessor court to the United States Court of Appeals for the Federal Circuit, "consistently applied the full payment rule with regard to the principal tax deficiency.  Where the principal tax deficiency has not been paid in full, such tax refund claims are dismissed . . . ."  Shore v. United States, 9 F.3d 1524, 1526 (Fed. Cir. 1993) (citing Tonasket v. United States, 590 F.2d 343 (Ct. Cl. 1978)); accord Rocovich v. United States, 933 F.2d 991, 993-94 (Fed. Cir. 1991).  As the court in Artuso explained, "[a] refund suit is exactly what the descriptive term implies."  80 Fed. Cl. at 338.  Thus, "payment of the assessed taxes in full is a prerequisite to bringing a refund claim."  Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); accord Artuso, 80 Fed. Cl. at 338 (citing Tonasket and explaining that the full payment rule requires that "a plaintiff must have fully paid the tax penalties, and interest at issue").

In addition to satisfying the full payment rule, a plaintiff must also have filed a claim for a refund with the IRS for the amount of the tax at issue in compliance with 26 U.S.C. § 7422(a). 80 Fed. Cl. at 338.  Section 7422(a), which waives the federal government's sovereign immunity from tax refund suits, Chi. Milwaukee Corp. v. United States, 40 F.3d 373, 375 (Fed. Cir. 1994), provides:

> No suit or proceeding shall be maintained in any court for the recovery of any
> internal revenue tax alleged to have been erroneously or illegally assessed or
> collected, or of any penalty claimed to have been collected without authority, or of
> any sum alleged to have been excessive or in any manner wrongfully collected,
> until a claim for refund or credit has been duly filed with the Secretary, according
> to the provisions of law in that regard, and the regulations of the Secretary
> established in pursuance thereof.

26 U.S.C. § 7422(a).  By requiring that the plaintiff first file a refund claim with the IRS that
complies with IRS regulations, section 7422(a) creates a jurisdictional prerequisite to filing a
refund suit.  Chi. Milwaukee Corp., 40 F.3d at 374 (citing Burlington N., Inc. v. United States,
684 F.2d 866, 868 (Ct. Cl. 1982)).

        In order to be "duly filed" under section 7422, a claim must comply with the timing
requirement set forth in 26 U.S.C. § 6511(a).  Section 6511(a) provides:

> Claim for credit or refund of an overpayment of any tax imposed by this title in
> respect of which tax the taxpayer is required to file a return shall be filed by the
> taxpayer within 3 years from the time the return was filed or 2 years from the time
> the tax was paid, whichever of such periods expires the later, or if no return was
> filed by the taxpayer, within 2 years from the time the tax was paid.

26 U.S.C. § 6511(a).  In United States v. Dalm, the Supreme Court emphasized that "unless a
claim for refund of a tax has been filed within the time limits imposed by [section] 6511(a), a suit
for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or
'wrongfully collected,' may not be maintained in any court."  494 U.S. 596, 602 (1990) (citing
United States v. Kales, 314 U.S. 186, 193 (1941)) (citation omitted).

        Recently, the Supreme Court, in Clintwood Elkhorn Mining Co., analyzed the plain
language of sections 7422(a) and 6511(a).  With respect to section 7422(a), the Supreme Court
noted that the provision contains "[f]ive 'any's' in one sentence," which it indicated "seem[s]
that Congress meant the statute to have expansive reach."  128 S.Ct. at 1516.  Thus, where a
party failed to file a refund claim with the IRS, the Supreme Court reasoned that the
"outcome . . . is clear given the language of the pertinent statutory provisions."  Id.  The Supreme
Court described section 6511(a) as "set[ting] forth in an 'unusually emphatic form'" the time
limitations for filing administrative refund claims.  Id. (quoting United States v. Brockamp, 519
U.S. 347, 350 (1997)).  The language contained in section 6511(a), the Supreme Court
concluded, "clearly state[s] that taxpayers must comply with the [Internal Revenue] Code's
refund scheme before bringing suit, including the requirement to file a timely administrative
claim."  Id.

## B. Motion to Dismiss–RCFC 12(b)(1)

The court's "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." Palmer v. United States, 168 F.3d 1310, 1313 (Fed. Cir. 1999). When considering an RCFC 12(b)(1) motion, the burden of establishing the court's subject matter jurisdiction resides with the party seeking to invoke it. See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936). The plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The court must accept as true the allegations in the plaintiff's complaint and must construe such facts in the light most favorable to the nonmoving party. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-19 (1982); Reynolds, 846 F.2d at 747. If the defendant or the court questions jurisdiction, then the plaintiff cannot rely solely on allegations in the complaint but must bring forth relevant, adequate proof to establish jurisdiction. See McNutt, 298 U.S. at 189. In deliberating a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to decide any factual disputes. See Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999); Reynolds, 846 F.2d at 747. If the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); see also RCFC 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

## III. DISCUSSION

### A. Plaintiffs Have Not Fully Paid Their Taxes For the Year at Issue

Defendant argues that as of the date on which plaintiffs filed their complaint, plaintiffs "have not paid any of the tax assessed against them for the year 1996." Def.'s Mot. 3 (citing Abruzzo v. United States, 24 Cl. Ct. 668, 673-74 (1991) (stating that it was "undisputed that at the time the complaint was filed in the court, the deferred tax . . . was not paid")). Defendant maintains that plaintiffs' complaint contains no allegation that plaintiffs paid the tax deficiencies assessed against them by the IRS for the 1996 tax year. Id. at 4. Furthermore, defendant argues that the IRS's Certificate of Assessments and Payments constitutes presumptive proof of valid tax assessments and indicates that plaintiffs have an outstanding tax liability for the year in question. Id. (citing Rocovich, 933 F.2d at 994 ("A Certificate of Assessments and Payments is routinely used to prove that a tax assessment has in fact been made.")); Groen Decl. Ex. 1 at 3-8. Defendant asserts that plaintiffs have failed to satisfy the full payment rule, thereby divesting this court of jurisdiction over their complaint. Def.'s Mot. 4.

Plaintiffs do not contest that they have failed to satisfy the full payment rule. See Pls.' Reply Def.'s Mot. ("Pls.' Resp.") 1-3; see also Def.'s Reply Pls.' Resp. ("Def.'s Reply") 1 (stating that plaintiffs "do not deny that they have not satisfied the 'full-payment' rule"). Indeed, it is clear that plaintiffs have not alleged that they paid their 1996 tax liability in full. See Shore,

9 F.3d at 1526; Ledford, 297 F.3d at 1382.  Thus, while the court construes the facts alleged in plaintiffs' complaint in the light most favorable to them as the nonmoving party, Reynolds, 846 F.2d at 747, it is apparent that plaintiffs have not demonstrated by a preponderance of the evidence that the court possess jurisdiction over their tax refund claim, id. at 748.  Accordingly, to the extent that plaintiffs' complaint seeks a tax refund, the court must dismiss the complaint for lack of jurisdiction.

### B.  The Court Lacks Jurisdiction Over Tax Abatement Claims

Defendant argues that plaintiffs' response brief "affirmatively acknowledge[s] . . . that the complaint seeks only the 'abatement of taxes and interest.'"  Def.'s Reply 1.  Defendant maintains that "[a] claim for abatement 'is one for declaratory judgment or injunctive relief against the IRS for which this [C]ourt has no jurisdiction.'"  Def.'s Mot. 4 (quoting Forsythe v. United States, 214 Ct. Cl. 748, 748 (1977) (second alteration in original)).  Consequently, defendant asserts, the court lacks jurisdiction over plaintiffs' complaint.  Id. at 4-5; Def.'s Reply 2-3.

Plaintiffs do not deny that they "are filing a claim for abatement of taxes and interest."  Pls.' Resp. 3.  Rather, they cite "certain other classes of tax cases," which they believe include claims for tax abatement, in which the court exercises jurisdiction.  Id. at 2-3 (citing the statutory provisions contained in note 6, supra).  In addition, plaintiffs maintain that the court possesses jurisdiction over "claims for the allowance of interest on a tax refund, as compared to a refund of interest paid . . . or a suit under a contract made by the [IRS] to pay an informer's award . . . ."  Id. at 4.  The instant case, however, does not fit within any of these types of actions.  As noted above, plaintiffs themselves characterize their claim as one for the abatement of taxes.  In Abruzzo, the United States Claims Court explained:

> Abatement of taxes is discretionary on the part of the Service.  An abatement of taxes requires an affirmative act by the Service.  Such an act is taken when the Service agrees that an assessment is erroneous or excessive. . . .  The mere filing of an amended return with the Service does not automatically result in an abatement of taxes.  The court lacks jurisdiction to consider a claim that an amount should be abated.

24 Cl. Ct. at 675 n.9 (citing Brahms v. United States, 18 Cl. Ct. 471, 475 (1989)).  Therefore, the court lacks jurisdiction to entertain plaintiffs' claim for abatement.

Furthermore, to the extent that plaintiffs assert that the court possesses jurisdiction on the basis of the IRS's denial of their claim for a tax adjustment, see Compl. ¶¶ 5-7, plaintiffs are mistaken.  First, although plaintiffs rejected a settlement offer from the IRS, evidence of settlement negotiations are not admissible.  See Fed. R. Evid. 408; PCL Constr. Servs., Inc. v. United States, No. 06-144C, 2008 WL 4725463, at *26 (Fed. Cl. Oct. 16, 2008) (stating that Rule 408 of the Federal Rules of Evidence "prohibits the admissibility of statements made in

settlement negotiations if offered to prove liability or the amount of a claim"). Here, plaintiffs allege that the "assessment and collection of the full deficiency assessment plus interest for the calendar year 1996 without adjustment for the casualty loss is erroneous and illegal." Compl. ¶ 7. Therefore, it is apparent that plaintiffs rely upon Ms. Bodner's letter in order to establish that they are entitled to a tax adjustment. Second, regardless of the admissibility of Ms. Bodner's letter, the letter is ultimately irrelevant to the jurisdictional question of whether plaintiffs fully paid their tax liability for 1996.

Third, the court will not review the IRS's determination denying plaintiffs' claim. <u>See</u>, <u>e.g.</u>, <u>Int'l Paper Co. v. United States</u>, 36 Fed. Cl. 313, 322 (1996) ("It is well-settled that a tax refund suit in the Court of Federal Claims 'is a <u>de novo</u> proceeding, in which the plaintiff bears the burden of proof' with respect to each and every element of its claim." (quoting <u>Sara Lee Corp. v. United States</u>, 29 Fed. Cl. 330, 334 (1993))); <u>Hearst Corp. v. United States</u>, 28 Fed. Cl. 202, 230 (1993) ("A tax refund suit is not a quasi appellate review of an administrative determination."), <u>rev'd on other grounds</u>, 36 F.3d 1116 (Fed. Cir. 1994). In a tax refund suit, plaintiffs "must first rebut the presumption of correctness associated with any determination made by the Commissioner" of the IRS and "then must prove the exact dollar around of the alleged overpayment to which [they] claim[] a refund." <u>Sara Lee Corp.</u>, 29 Fed. Cl. at 334. Of course, plaintiffs do not seek a tax refund in this case. Consequently, plaintiffs have not alleged that they overpaid any amount because they have not paid their tax liability for 1996. Even assuming, <u>arguendo</u>, that plaintiffs alleged that they paid their tax liability for 1996, they have not alleged how the IRS's denial of their claim was incorrect.

To summarize, plaintiffs have not brought a tax refund suit in the court. Rather, they seek an abatement of taxes and interest, relief that the court is unable to provide. Although plaintiffs assert that the court possesses jurisdiction to entertain several types of tax-related actions, the instant case does not constitute any of those types. As a result, the court must dismiss plaintiffs' claim for lack of subject matter jurisdiction. <u>See</u> RCFC 12(h)(3).

## IV.  CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED**. The Clerk of Court is directed to dismiss plaintiffs' complaint **WITHOUT PREJUDICE** and to enter judgment accordingly. No costs.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge